IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:16-CV-00002-FL

**Krisceda Williams Johnson,**

              Plaintiff,

v.

**Nancy Berryhill**, Acting Commissioner of Social Security,[1]

              Defendant.

**Memorandum & Recommendation**

      Plaintiff Krisceda Williams Johnson instituted this action on January 8, 2016, to challenge the denial of her application for social security income. Johnson claims that the Administrative Law Judge ("ALJ") Christopher Willis erred in determining that she had the residual functional capacity ("RFC") to perform a reduced range of light work and that he incorrectly assessed her credibility. Both Johnson and Defendant Nancy Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 22, 26.

      After reviewing the parties' arguments, the court has determined that ALJ Willis reached the appropriate decision. There is substantial evidence to support his RFC finding that Johnson is capable of performing a reduced range of light work. ALJ Willis also properly evaluated

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

Johnson's credibility. Therefore, the undersigned magistrate judge recommends that the court deny Johnson's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

I.  **Background**

On June 2, 2012, Johnson filed an application for disability benefits alleging that she was living with a disability that began on August 11, 2011. After her claim was denied at the initial level and upon reconsideration, Johnson appeared by video-conference at a hearing before an ALJ Willis on November 6, 2014, to determine whether she was entitled to benefits. ALJ Willis determined determined Johnson was not entitled to benefits because she was not disabled. *Id.* at 20–30.

ALJ Willis found that Johnson had the following severe impairments: sarcoidosis, hypertension, and obesity. *Id.* at 22. ALJ Willis found that Johnson's impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 24. ALJ Willis then determined that Johnson had the RFC to perform light work with limitations. *Id.* at 25. She can frequently climb ramps and stairs but only occasionally climb ladders, ropes, or scaffolds. Johnson is limited to frequent balancing, stooping, kneeling, crouching, and/or crawling. *Id.* She must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, poor ventilation, and the like. *Id.* She also must avoid concentrated exposure to workplace hazards such as dangerous moving machinery and unprotected heights. *Id.* ALJ Willis concluded that Johnson was capable of performing her past relevant work as a transcriber and customer service clerk. *Id.* at 29. Thus, ALJ Willis found that Johnson was not disabled. *Id.* at 30.

After unsuccessfully seeking review by the Appeals Council, Johnson commenced this action by filing a complaint on January 8, 2016. D.E. 5.

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**II.     Analysis**

    **A.     Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

    **B.     Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the

claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

  C. **Medical Background**

  The medical evidence reveals the following: Johnson was diagnosed with sarcoidosis in 1999. Tr. at 40. Johnson saw Dr. Maria Fakadej in August 2011 for symptoms of asthma and fatigue. *Id.* at 282–85. Later that month she reported symptoms of a sarcoid flare-up. *Id.* Dr. Fakadej prescribed a week-long taper of Johnson's steroid medication, after which she reported improvement in her symptoms. *Id.* at 249. Dr. Fakadej referred Johnson to Dr. Hilda Metjian at Raleigh Pulmonology for an appointment on August 24, 2011. *Id.* at 249–50. Johnson reported a cough and shortness of breath as well as hand and leg cramps. *Id.* Treatment notes reflect that Johnson was able to speak without cough or dyspnea, she had clear lungs without crackles or wheezes, and her Pulmonary Function test yielded normal results. *Id.* at 250–51. Dr. Metjian directed a steroid taper. *Id.* at 250.

  Later that month, Johnson had an appointment at Eye Specialists of Carolina for complaints of pain and blurred vision, for which she was prescribed medication. *Id.* at 294.

  In February 2012 and August 2012, Johnson followed up with Dr. Fakadej for hypertension, fatigue, weakness, cough, and shortness of breath. *Id.* at 274–75, 331–32. Treatment notes reflect that Johnson was independent in activities of daily living. *Id.* at 273, 275, 277, 281. Johnson returned to Eye Specialists of Carolina in July 2012 reporting eye pain and blurred vision. *Id.* at 287, 301. Treatment records note that Johnson's corrected vision was 20/25 in each eye and she was prescribed eye drops. *Id.*

4

Johnson visited urgent care in February 2013 for cough and shortness of breath. She received treatment with a steroid injection and medications. *Id.* at 254–58. One year later, Johnson again sought treatment at an urgent care for a continued cough, at which time medications were again prescribed. *Id.* at 359–62. At an October 2014 visit to Watford Family Practice, Johnson reported persistent cough and depression. *Id.* at 363. Providers prescribed medication and recommended Johnson seek a mental health consultation. *Id.*

Johnson saw Dr. Peter Morris in August 2012 for a consultative examination. *Id.* at 323–27. She complained of blurry vision, shortness of breath, cough, and leg pain. *Id.* at 323. Records reflect that Johnson used a cane but did not require assistance to ambulate, take off her shoes, or to get on an off the examination table. *Id.* at 324–25. Dr. Morris found that Johnson had "decent" vision with no visual limitations expected. *Id.* at 326–27. He also found that she had full motor strength in all extremities. *Id.* at 326.

Dr. Maqsood Ahmed performed a consultative examination in February 2013. *Id.* at 348–51. Dr. Ahmed noted that Johnson was independent in her daily activities and her mobility, and he found that she had normal vision and a clear chest, without rhonchi or wheezing. *Id.* Dr. Ahmed did not observe any shortness of breath with mobility testing. *Id.* at 350. A Pulmonary Function Test conducted on the same date noted no fatigue, no shortness of breath at rest or upon exertion, and no wheezing during the test. *Id.* 336.

### D. Residual Functional Capacity

Johnson first argues that ALJ Willis erred in finding that she could perform light work with additional limitations. She maintains that he failed to perform a function-by-function analysis before determining her RFC. Johnson also contends that she is unable to perform her past relevant work. The Commissioner asserts, and the court agrees, that substantial evidence

supports ALJ Willis's determination that Johnson is capable of performing both a reduced range of light work and her past relevant work.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Johnson makes two arguments with respect to the RFC finding. She first argues that ALJ Willis erred because he did not perform a function-by-function analysis of her abilities. Johnson also asserts she is unable to perform her past relevant work as a transcriber or a customer service clerk not only because she cannot look at a screen for extended periods due to vision problems but also because she would be absent from work three or more days per month, a limitation that would preclude employment.

### (1) Function By Function Analysis

Under SSR 96–8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." It must also "include a

6

discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p. The RFC must address both the exertional and non-exertional capacities of the claimant and must be expressed in terms of work-related functions. SSR 96–8p.

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). However, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki* v. *Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

In addressing the function-by-function assessment, or lack thereof, the Fourth Circuit's recent decision in *Monroe* v. *Colvin*, 826 F.3d 176 (4th Cir. 2016), is instructive. In *Monroe*, the Court of Appeals remarked that "expressing the RFC before analyzing the claimant's limitations function by function creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Id.* at 187–88 (quoting *Mascio*, 780 F.3d at at 636) (citation omitted). The *Monroe* Court concluded that remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review[.]" *Id.* (quoting *Mascio*, 780 F.3d at 636).

Here, ALJ Willis did not conduct an analysis detailing Johnson's specific abilities for each exertional function. Nonetheless, ALJ Willis sufficiently addressed all of Johnson's impairments and made specific findings about the impact her impairments would have on her

7

functional abilities. His findings are reflected in the detailed discussion of the medical evidence and Johnson's testimony. Tr. at 22–29. Meaningful review of ALJ Willis's decision is possible because he properly assessed and explained Johnson's capacity to perform relevant functions for those activities where the evidence suggested she may have restrictions.

There is no contrary evidence in the record supporting a finding that Johnson is incapable of a reduced range of light work.[3] Consequently, ALJ Willis's failure to perform a function-by-function assessment does not require remand. Johnson's argument therefore lacks merit and should be rejected.

### (2) Past Relevant Work

ALJ Willis's findings that Johnson can perform her past relevant work[4] is supported by substantial evidence. Johnson contends previous work is foreclosed given her visual impairments and her anticipated frequent absences. However, these limitations were neither included in the RFC finding nor are they supported by the record. Accordingly, ALJ Willis properly excluded such limitations from consideration in questioning the VE, at step four, as to whether Johnson's past relevant work was compatible with her RFC.

The burden to establish an inability to perform past relevant work lies with the claimant. *See Thompson* v. *Astrue*, 442 F. App'x 804, 807 (4th Cir. Aug. 10, 2011) (noting that, at step four, claimant has burden of proving she could not perform past relevant work). The additional limitations Johnson proposes lack support in the record. First, although Johnson complained of blurry vision, the medical evidence demonstrated that the only treatment prescribed was eye

---

[3] Although state programs concluded Johnson was disabled, ALJ Willis noted that such finding were based on her statements to providers and, furthermore, such state programs' findings are not binding on the Commissioner, to whom the ultimate issue of disability is reserved. Tr. at 29.

[4] It bears noting that Johnson's two previous positions of transcriber and customer service clerk are both jobs at the sedentary level. *See* DOT Nos. 203.582-058 and 241.367-014.

drops. Further, exams found essentially normal vision bilaterally, as her vision was correctable to 20/25 in each eye. Tr. at 28–29. Most notably, despite this alleged limitation, Johnson was able to continue driving without restriction. *Id.* at 48. Accordingly, ALJ Willis found that her vision was not significantly limited and any vision issues she experienced responded well to treatment. *Id.* at 28.

Additionally, no medical provider, consultant, or reviewer opined that Johnson's impairments would cause her to miss work three or more days per month. This claimed limitations appears to be based on Johnson's own statements that she lies down for several hour each day to relieve her pain. *Id.* at 54.

In contrast, a state medical consultants, Drs. Margaret Parrish and Perry Caviness, opined that Johnson was capable of light work with postural limitations. *Id.* at 29. Their findings, which are supported by the medical evidence, constitute substantial evidence supporting ALJ Willis's conclusions with respect to the RFC. *See Smith* v. *Schweiker*, 795 F.2d 343, 345 (4th Cir. 986) (opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner). The Vocational Expert ("VE"), too, testified that Johnson's former positions were compatible with the RFC set forth by ALJ Willis. Tr. at 59.

In sum, Johnson has not identified any additional limitations that are well-supported in the record that ALJ Willis did not address or that preclude her from meeting the demands of her past work. Finding that Johnson's argument regarding the RFC determination lacks merit, the court should deny her claim on this issue.

### E. Credibility

Johnson next contends that ALJ Willis erred in assessing her credibility. Specifically, she argues that the objective medical evidence supports her statements concerning the limiting

9

Case 4:16-cv-00002-FL   Document 22   Filed 02/09/17   Page 9 of 13

effects of her symptoms. The Commissioner argues that ALJ Willis properly declined to fully credit Johnson's statements. The undersigned finds that ALJ Willis did not err in his credibility determination.

There is a two-step process to determine whether a claimant is disabled by pain: (1) the ALJ must determine whether the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged;" (2) if so, the ALJ must evaluate the intensity and persistence of the claimant's pain or symptoms and the extent to which it affects the claimant's ability to work. 20 C.F.R. §§ 416.929(c)(2). In evaluating the second prong, the ALJ cannot require objective evidence of the pain itself. *Craig* v. *Chater,* 76 F.3d 585, 592–93 (4th Cir. 1996). However, objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of the claimant's pain. SSR 96–7p, 1996 WL 374186, at *6.[5] Moreover, the ALJ must consider it in evaluating the individual's statements. *Id.*

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, (5) treatment, other than medication, received to relieve the symptoms, and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§

---

[5] Subsequent to the ALJ's decision, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Although the more recent Ruling eliminated the term" credibility" noted that "subjective symptom evaluation is not an examination of an individual's character[]" and directed that the determination "contain specific reasons for the weight given to the individual's symptoms[.]" *Id.* Because SSR 96-7p was in effect at the time the ALJ's decision, the undersigned will review the decision under SSR 96-7p. *See Keefer v. Colvin*, C/A No. 1:15-4738-SVH2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

404.1529(c)(3), 416.929(c)(3). A claimant's subjective statements of pain alone are insufficient to establish disability. *Mickles* v. *Shalala*, 29 F.3d 918, 919 (4th Cir. 1994).

The ALJ has full discretion to weigh the subjective statements with the objective medical evidence and other matters of record. *Craig*, 76 F.3d at 595 (holding that claimant's allegations of pain need not be accepted to extent that they are inconsistent with the record); *see also Hawley* v. *Colvin*, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 14, 2013) (ALJ need not accept claimant's claims at face value). In a district court's review, the ALJ's findings are entitled to great weight because of the ALJ's ability to observe and evaluate testimony firsthand. *Shively*, 739 F.2d at 989–90.

ALJ Willis found that while her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Johnson's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible [.]" Tr. at 26. ALJ Willis stated that "the totality of the medical evidence does not support any limitations beyond the scope of the [RFC]." *Id.* He then explained his finding. He noted that within two weeks of her alleged disability onset date, Johnson had clear lungs, no edema, and full strength in all extremities (*id.*); pulmonary function tests showed normal results and providers tapered her medication (*id.* at 26–27); throughout 2011 and 2012, despite claims of pain and muscle weakness, exams showed full range of motion and full strength in all extremities with no significant wheezing in her lungs (*id.* at 27); although she complained of blurry vision, Johnson's vision exams were essentially normal and did not establish decreased vision (*id.* at 27–28); reports of persistent coughing and sarcoidosis flare-ups were treated conservatively (*id.* at 27); she has responded well to treatment (*id.* at 28); and her reported activities included light household chores, independently attending to her personal needs, driving, despite claims of

impaired vision, and, on one occasion, painting, despite allegations of pain and pulmonary conditions (*id.* at 23, 28). This evidence undermines Johnson's statement of her symptoms and their limiting effects.

For these reasons, ALJ Willis properly found that Johnson was not fully credible and declined to fully credit her statements. *Id.* at 26. As Johnson has only show disagreement, not error, with ALJ Willis's evaluation of this evidence, her argument on this issue lacks merit. *See Johnson*, 434 F.3d at 653 (reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

## III. Conclusion

For the forgoing reasons, the court recommends that the court deny Johnson's Motion for Judgment on the Pleadings (D.E. 22), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 26), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation, receive further evidence, or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

impaired vision, and, on one occasion, painting, despite allegations of pain and pulmonary conditions (*id.* at 23, 28). This evidence undermines Johnson's statement of her symptoms and their limiting effects.

For these reasons, ALJ Willis properly found that Johnson was not fully credible and declined to fully credit her statements. *Id.* at 26. As Johnson has only show disagreement, not error, with ALJ Willis's evaluation of this evidence, her argument on this issue lacks merit. *See Johnson*, 434 F.3d at 653 (reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

## III. Conclusion

For the forgoing reasons, the court recommends that the court deny Johnson's Motion for Judgment on the Pleadings (D.E. 22), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 26), and affirm the Commissioner's decision.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation, receive further evidence, or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen* v. *Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: February 9, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge